IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

AMANDA CLAYTON,

      Plaintiff,

v.

DREAMSTYLE REMODELING OF COLORADO, LLC.; DREAMSTYLE REMODELING, INC.; PAUL WATKINS,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Amanda Clayton, by and through undersigned counsel, Stinar & Zendejas, PLLC, brings this action against Defendants Dreamstyle Remodeling of Colorado, LLC; Dreamstyle Remodeling, Inc.; and Paul Watkins (collectively "Defendants") as follows:

### I. INTRODUCTION

1.     This lawsuit is necessitated by Defendants pervasive and severe sexual harassment and sexual discrimination of Plaintiff, retaliation against Plaintiff following her complaint of harassment, including but not limited to her termination of employment.  Defendant Paul Watkins ("Watkins"), who at all times was Plaintiff (and other female employees' supervisor), is a serial harasser, known by Defendants Dreamstyle Remodeling of Colorado, LLC and Dreamstyle Remodeling, Inc. (herein collectively "Dreamstyle") as a serial harasser. Yet, despite Dreamstyle's knowledge, Watkins has been permitted to prowl, intimidate, and victimize women at Dreamstyle for years with impunity, until now.

2.      Plaintiff, after successfully working for Dreamstyle for 6 months, was terminated nine days after she reported Watkins' inappropriate, harassing, and retaliatory behavior to the company president, Larry Chavez on August 26, 2019.  About a day after Plaintiff's complaint, Watkins instructed Plaintiff's sales manager, Alexandra Vinet, to terminate Plaintiff.  When Ms. Vinet refused and questioned why, Watkins confided in Ms. Vinet (potentially for his ulterior motives) that Plaintiff had filed a sexual harassment complaint against him and (as some sort of compromise to termination?) requested Ms. Vinet to draft a letter on his behalf fabricating unsatisfactory performance by Plaintiff as grounds to justify Plaintiff's upcoming termination. When Ms. Vinet refused again, she was subjected to Defendants' retaliation.  Defendants must be called to account for their unlawful activities.

## II. JURISDICTION

3.      This action is brought pursuant this Court's federal question jurisdiction, 28 U.S.C. § 1331, to bring claims against Dreamstyle under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as this Court's supplemental jurisdiction, 28 U.S.C. § 1337, to bring claims against Defendants under the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402 *et seq.* (hereafter "CADA"), all of which prohibits sexual harassment, as well as discrimination and retaliation on the basis of sex.

4.      Individuals, including managers, supervisors and co-workers, may be personally liable under the CADA for "aiding and abetting" discrimination, including sexual harassment, in violation of the CADA.  C.R.S. § 24-34-402(1)(e)(I).

5.      Jurisdiction is proper in the U.S. district court for the District of Colorado pursuant to, 28 U.S.C. § 1332 and 28 U.S.C. § 1337.

III. VENUE

6.      Venue is proper in the district of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the state of Colorado.

IV. PARTIES

7.      Plaintiff Amanda Clayton ("Plaintiff") is an individual woman residing in El Paso County, Colorado.

8.      Defendant Dreamstyle Remodeling of Colorado, LLC is a Colorado limited liability company with an office located at 8678 Concord Center Drive, Suite 200, Englewood, CO 80112. Upon information and belief, and at all relevant times, Dreamstyle Remodeling of Colorado, LLC employed up to 20 employees at the office location.  Upon information and belief, and at all relevant times, Dreamstyle Remodeling of Colorado, LLC employed over 500 employees across the United States at eight locations.

9.      Defendant Dreamstyle Remodeling, Inc. is a New Mexico foreign corporation with an office located at 1460 N Renaissance Boulevard NE, Albuquerque, NM 87107.  Upon information and belief, and at all relevant times, Dreamstyle Remodeling, Inc. employed up to 20 employees at the office location.  Upon information and belief, and at all relevant times, Dreamstyle Remodeling, Inc. employed over 500 employees across the United States at eight locations.

10.     Defendant Paul Watkins is an individual man believed to reside in Colorado, who at all relevant times, served as a General Manager of Dreamstyle.

11.     Upon information and belief, Defendants were joint employers of Plaintiff and shared or co-determined matters governing the essential terms and conditions of Plaintiff's employment.

12.     Upon information and belief, Defendants directed, controlled, or maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     On May 28, 2020, the Colorado Civil Rights Division  ("CCRD") mailed, and Plaintiff subsequently received, a "Notice of Right to Sue" for CCRD Charge No. E2000006947 (**Exhibit 1**) which pleaded actual discrimination and/or retaliation on the basis of sex.  This Notice entitles Plaintiff to initiate this action within 90 days of receipt of said notice.

14.     Plaintiff has satisfied all private, administrative, and judicial prerequisites necessary for this action.

## VI. GENERAL ALLEGATIONS

A.  <u>PLAINTIFF BEGINS HER EMPLOYMENT</u>.

15.     On March 19, 2019, Plaintiff began working for Dreamstyle as a Sales Representative. Prior to joining Dreamstyle, Plaintiff was employed as a sales and account manager for almost five years and left her prior employment for Dreamstyle's offer of "an exceptionally high paying sales career," (Dreamstyle's February 2019 Zip Recruiter Advertisement) as well as opportunities for advancement and a promising career with Dreamstyle.

16.     Plaintiff began her employment with Dreamstyle earning $100 per day as training pay; on April 14, 2019, Plaintiff completed training and begin earning commission-based income.

17.     Upon information and belief, had it not been for Watkins and then Dreamstyle's actions described herein, Plaintiff's commission-based income was projected to reach $60,000 in 2019 and $120,000 - $150,000 in 2020 as she gained clients and experience with Dreamstyle. In addition to her commissions, Plaintiff was also eligible to participate in a 401k and receive health, dental, and life insurance.

B.  ROLE OF DEFENDANTS IN PLAINTIFF'S EMPLOYMENT.

18.     Throughout Plaintiff's employment with Dreamstyle, Watkins, a Dreamstyle General Manager, held a position of power, control, and authority over Plaintiff in the workplace as Plaintiff's supervisor.

19.     At all relevant times during Plaintiff's employment, Watkins had the ability to control and did control the terms of Plaintiff's employment, including her sales opportunities, discipline, entitlement to advancement, analysis of her specific and overall performance and continued employment, if not provided meaningful input into any decision to promote, retain, or terminate Plaintiff.

20.     Throughout Plaintiff's employment, Defendants directed, controlled, and maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

21.     Throughout Plaintiff's employment, Dreamstyle provided meaningful input into Plaintiff's entitlement to advancement and other benefits, analysis of her specific and overall

performance, and provided meaningful input into any decision to promote, retain, or terminate Plaintiff.

C.  PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS.

22.     In March 2019, almost immediately following Plaintiff's hiring, Watkins repeatedly showed Plaintiff and other new employees provocative and sexually suggestive photographs of women, informing them of his pastime of photographing women.

23.     During Plaintiff's employment, Watkins would routinely bring up or mention his desire to photograph women, seemingly suggesting to Plaintiff and other women that he was looking for them to serve as his photographic models.

24.     Plaintiff did her best to avoid Watkins' presentation of these photographs and remarks about his desire to photograph women, as it made her uncomfortable.

25.     Watkins' presentation of these photographs and references to his pastime were unwelcomed, offensive, directed at Plaintiff because of her sex, and given the burlesque, sexually suggestive, and graphic nature of the photography was sufficiently severe and/or pervasive to create a hostile work environment, altering Plaintiff's work environment.

26.     At all relevant times, by virtue of Watkins' position as Dreamstyle's General Manager, and, upon information and belief, his known harassing practices, Dreamstyle knew or should have known of Watkins' offensive conduct.

27.     In April 2019, when asking Watkins for feedback regarding information from a sale, Watkins, in a suggestive tone, told Plaintiff she had incorrectly entered the information and stated he "would have to spank [her] butt."

28.     Watkins' statement was unwelcomed, offensive, directed at Plaintiff because of her sex, and given the sexualized threat of hitting Plaintiff on her buttocks, Watkins' statement was sufficiently severe to create a hostile work environment, altering Plaintiff's work environment.

29.     At all relevant times, by virtue of Watkins' position as Dreamstyle's General Manager, and, upon information and belief, his known harassing practices, Dreamstyle knew or should have known of Watkins' offensive statement.

30.     After these two incidents, in April 2019 Plaintiff complained of Watkins' discrimination and harassment against Plaintiff to the Sales Manager who reported to Watkins, Sarah Pearse, but no corrective action was taken.  Upon information and belief Sarah Pearse, who not only had Watkins as a supervisor but was dealing with significant medical issues, was terminated shortly after Plaintiff complained to her.

31.     Upon information and belief, during the time Plaintiff was employed, other female employees under Watkins complained to Dreamstyle about Watkins discriminating and harassing behavior.

32.     In May 2019, around 9:00pm, while Plaintiff was at home, Watkins telephoned Plaintiff under the guise of seeking a restaurant recommendation in Colorado Springs, which soon turned into an examination by Watkins, for approximately 90 minutes, of very personal issues including Plaintiff's relationship with her husband, her family, her age, and her ethnicity. Throughout this call Plaintiff was in shock for just how inappropriate Watkins' questions and statements were and tried to politely end the interrogation, but to no effect.  Plaintiff simply could not hang up the phone, as it was her General Manager on the other line.  Unfortunately,

Plaintiff's responses, which did not seem to fall in line with Watkins' game or desires, ended up causing Plaintiff to suffer more.

33.     Watkins' interrogation of such a personal nature was unwelcomed, offensive, directed at Plaintiff because of her sex, and given the sexualized undertone of seeking information about Plaintiff's relationships with her husband, Watkins' interrogation was sufficiently severe and pervasive to create a hostile work environment, altering Plaintiff's work environment.

34.     At all relevant times, by virtue of Watkins' position as Dreamstyle's General Manager, and, upon information and belief, his known harassing practices, Dreamstyle knew or should have known of Watkins' offensive statement.

35.     After this lengthy phone conversation, Watkins began treating Plaintiff unfavorably, including assigning her to appointments previously agreed upon to be too far to reasonably drive.  Watkins directed sales opportunities away from Plaintiff, and instead gave her leads that were not promising or outside of her territory or both.  It seemed that Plaintiff's rebuffs against Watkins and/or her prior complaint to Sarah Pearse, resulted in Watkins' retaliatory actions against her and sufficiently severe to create a hostile work environment, altering Plaintiff's work environment.

36.     At all relevant times, by virtue of Watkins' position as Dreamstyle's General Manager, and, upon information and belief, his known harassing practices, Dreamstyle knew or should have known of Watkins' actions to economically starve Plaintiff whose earnings were entirely commissioned-based.

37.     In June 2019, Watkins, while reviewing Plaintiff's sales thus far during a staff meeting, told Plaintiff that since her husband was also in sales and was coaching her, she should "start bribing him with sex."

38.     Watkins' statement of such a personal nature and in front of staff was unwelcomed, offensive, directed at Plaintiff because of her sex, and given the blatant sexual comment, Watkins' statement was sufficiently severe to create a hostile work environment, altering Plaintiff's work environment.  Plaintiff felt humiliated and demeaned in an environment meant for coaching and support.

39.     At all relevant times, by virtue of Watkins' position as Dreamstyle's General Manager, and, upon information and belief, his known harassing practices, Dreamstyle knew or should have known of Watkins' offensive statement.

D.  DEFENDANTS' WRONGFUL TERMINATION.

40.     On August 26, 2019, Plaintiff had the courage to send an email to Dreamstyle President Larry Chavez ("Chavez") complaining of Watkins ongoing harassment and retaliatory behaviors.

41.     Chavez and Vice President of Operations Andrew MacGillivray ("MacGillivray") responded to Plaintiff's email reassuring her that they will begin an immediate investigation and arrange a time for Plaintiff and MacGillivray to speak.

42.     On August 27, 2019, Plaintiff was placed on an unpaid administrative leave while Dreamstyle claimed it would "investigate" the situation.  No other option, work environment, manager, or other action was offered or provided to Plaintiff.  In fact, Plaintiff could at all times continue to perform her job as she was a salesperson and needed to sell, not be in the office.

However, Dreamstyle intentionally placed Plaintiff in an even worse position of being on unpaid administrative leave, unable to work, not protecting her from Watkins' further retaliation, not giving her any other options, and not performing any investigation or taking any action against Watkins (which she later learned).

43.     Unbeknownst to Plaintiff, on or about August 28, 2019, Watkins instructed Sales Manager Alexandra Vinet (who replaced Sarah Pearse) to terminate Plaintiff.

44.     When Ms. Vinet questioned why, Watkins became very upset with her and, at that time, did not say anything.

45.     The next day, and unbeknownst to Plaintiff, on or about August 29, 2019, Watkins informed Ms. Vinet that Clayton had filed a sexual harassment claim against him and told Ms. Vinet to draft a letter on his behalf fabricating unsatisfactory performance by Plaintiff, as a basis for her termination.

46.     When Ms. Vinet immediately refused Watkins' request, Watkins again became upset at her.  It was thereafter that Watkins retaliated against Ms. Vinet by not permitting her to speak during sales meetings, required her to work 10-14 hours per day, seven-days per week, refused her requests for time off, and verbally admonished and demeaned her in front of colleagues.  As it turns out, Ms. Vinet's complaint to Chavez around early October 2019 was never responded to.

47.     During the timeframe of Dreamstyle's alleged "investigation," Plaintiff was informed by her coworkers that Watkins had told them she "wouldn't be employed [there] much longer" and that he had spent significant time defending himself against her allegations.

48.     On September 4, 2019, Plaintiff sent an email to MacGillivray regarding Watkins retaliatory behavior during the alleged "investigation." In her correspondence, Plaintiff expressed her frustration and uncertainty with how to move forward, as her confidentiality had been breached and she was being retaliated against.

49.     In MacGillivray's September 5, 2019 disingenuous and ignorant reply, he stated the "investigation" was ongoing and that Plaintiff would be welcomed back to active selling status – wholly ignoring the complaint of harassment and retaliation by Watkins…who was to continue to be Plaintiff's supervisor.  MacGillivray offered no direction, idea, or support for how Plaintiff could comfortably and safely return to work with Watkins or be protected from future harassment and discrimination; the only reassurance offered is that "corrective action will be taken to address any verifiable occurrences of harassment."

50.     After almost four weeks of _silence_ from Dreamstyle, Plaintiff sent Chavez and MacGillivray an email expressing disappointment in Dreamstyle's protection of Watkins and stating the financial and emotional impact she was suffering as a result of taking necessary leave to prevent further harassment and retaliation.

51.     MacGillivray's response was to, yet again, reiterate to Plaintiff that she would be welcomed back and to state that Dreamstyle claimed her leave to be "entirely voluntary" while offering no reassurance that the discriminatory, harassing, and retaliatory environment would be different. Dreamstyle very purposely took this action to feign a welcomed environment.

52.     At no time did Defendants take any action to protect Plaintiff or prevent her from suffering from discrimination, harassment, or retaliation.

53.     On and after August 26, 2020, Defendants never took any action to investigate Plaintiff's claims of discrimination, harassment, and retaliation.

54.     On and after August 26, 2020, Defendants took no action to return Plaintiff to work – and instead only respond to Plaintiff's emails claiming she was on a "voluntary" leave. There was no reason for Plaintiff, a fully commissioned salesperson, to place herself on a "voluntary" unpaid leave.

55.      All of the above harassing, discriminatory, and retaliatory actions taken by Defendants negatively impacted the terms and conditions of Plaintiff's employment.

56.     As alleged above, after Plaintiff rebuffed Watkins and complained about him, Watkins made the decision to take away Plaintiff's sales opportunities, place Plaintiff on unpaid leave and/or terminate Plaintiff.

57.      As alleged above, alternatively, after Plaintiff rebuffed Watkins and complained about him, Watkins provided significant and meaningful input to Dreamstyle to take away Plaintiff's sales opportunities, place Plaintiff on unpaid leave and/or terminate Plaintiff.

58.     Upon information and belief, Defendants treated female employees, including Plaintiff, very much differently and on unequal terms than they treated male employees.

59.     Upon information and belief, male employees working for Defendants were not treated in the same harassing, disparaging, retaliatory, and unwelcomed manner (which negatively altered the work environment) because they were men.

60.     Upon information and belief, Defendants unequal treatment of Plaintiff was motivated by her status as a woman.

61.     As a consequence of Defendants' above-mentioned actions, Plaintiff has suffered emotional damages and received treatment from a professional.  Plaintiff suffered severe emotional distress.

62.     As a consequence of Defendants' above-mentioned actions, Plaintiff has suffered economic damages as follows: loss of income, loss of benefits, loss of economic opportunities and professional growth, loss of increased reputation, and other forms of economic harm.

63.     As a consequence of Defendants' above-mentioned failures, Plaintiff has been forced to retain counsel and pursue litigation, incurring costs and attorney's fees.

### VII. CLAIMS OF RELIEF

**FIRST CLAIM OF RELIEF**
**Violation of Title VII**
**Sex Discrimination**
**42 U.S.C. § 2000e-2**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC and Dreamstyle Remodeling, Inc.**

64.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

65.     At all relevant times, Dreamstyle qualified as Plaintiff's employers and Plaintiff qualified as Dreamstyle's employee under Title VII, given that Dreamstyle has 15 or more employees.

66.     Protection against discrimination on the basis of gender is provided by Title VII.

67.     Title VII prohibits: "discriminat[ion] … because of … sex" in the "terms" or "conditions" of employment. "The critical issue, Title VII's text indicates, is whether members

of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

68.     As alleged above, Plaintiff is a woman, a member of a protected class.

69.     As alleged above, at all relevant times, Plaintiff was qualified for her outside sales position and satisfactorily performed her position.

70.     As alleged above, Plaintiff suffered adverse employment actions, including but not limited to, not receiving sales opportunities, being placed on an indefinite unpaid administrative leave after her complaint of harassment/discrimination/retaliation, and being terminated.

71.     As alleged above, Plaintiff's sex was the motivating factor for these adverse employment actions taken by Dreamstyle.

72.      As alleged above, Defendants caused Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against because of Plaintiff's sex and engagement in protected activities such as opposing/complaining of severe, pervasive, and/or oppressive discriminatory/harassing/retaliatory behaviors.

73.     Notwithstanding the allegation that Dreamstyle's General Manager Watkins engaged in this discrimination and that complaints were made about this discrimination to Dreamstyle, at all times mentioned herein Dreamstyle's agents, managers, and supervisors knew or should have known of this conduct by witnessing some of the discriminating events and through complains of discrimination made by Plaintiff and others.

74.     As alleged above, Dreamstyle caused, allowed, and/or condoned Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against for

engaging in protected activities such as opposing discriminatory behaviors by allowing Watkins to continue to serve as manager, which allowed him to make continuous unwelcomed, insensitive, harassing comments to Plaintiff.

75.     Dreamstyle conducted no investigation into Plaintiff's complaints of discrimination, harassment, or retaliation, and subsequently administered insufficient remedies, specifically designed to target Plaintiff, harm Plaintiff emotionally and economically, and terminate her employment.  Defendants' acts, or lack thereof, caused a sexually discriminating, hostile work, and retaliatory environment to which Plaintiff could not comfortably and safely return.

76.     As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered emotional anguish and distress, loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

77.     At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

78.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**SECOND CLAIM FOR RELEIF**
**Violation of Title VII**
**Sexual Harassment / Hostile Work Environment**
***See e.g. Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) (recognizing sexual harassment as a violation of Title VII and expressly holding that such claims are actionable under Title VII).**

**Against Defendants Dreamstyle Remodeling of Colorado, LLC and Dreamstyle Remodeling, Inc.**

79.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

80.     At all relevant times, Dreamstyle qualified as Plaintiff's employers and Plaintiff qualified as Dreamstyle's employee under the Title VII, given that Dreamstyle has 15 or more employees.

81.     Protection against sexual harassment / hostile work environment is provided by Title VII.

82.     The Tenth Circuit has recognized that the essence of either type of sexual harassment is not limited to conduct that has clearly sexual overtones. Instead, the basic question is whether the conduct at issue was directed toward someone due to her or his gender. Thus, "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII [or the CADA]." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987), *see also Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1001 (10th Cir. 1996).

83.     As alleged above, Dreamstyle's conduct, by and through Watkins, complained of by Plaintiff was unwelcome.

84.     As alleged above, Dreamstyle's conduct, by and through Watkins, complained of by Plaintiff was offensive.

85.     As alleged above, Dreamstyle's conduct, by and through Watkins, complained of by Plaintiff was sexual in nature or directed at Plaintiff because of her sex.

86.     As alleged above, Dreamstyle's conduct, by and through Watkins, complained of by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment by creating an abusive working environment.

87.     As alleged above, Dreamstyle knew or should have known about the conduct to which Plaintiff claims she was subjected and failed to implement reasonably prompt and appropriate corrective action. Notwithstanding the allegation that Dreamstyle's General Manager Watkins engaged in this discrimination and that complaints were made about this discrimination to Dreamstyle, at all times mentioned herein Dreamstyle's agents, managers, and supervisors knew or should have known of this conduct by witnessing some of the discriminating events and through complains of discrimination made by Plaintiff and others.

88.     As alleged above, Defendants caused Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against because of Plaintiff's sex and engagement in protected activities such as opposing/complaining of severe, pervasive, and/or oppressive discriminatory/harassing/retaliatory behaviors.

89.     As alleged above, Dreamstyle caused, allowed, and/or condoned Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against for engaging in protected activities such as opposing discriminatory behaviors by allowing Watkins to continue to serve as manager, which allowed him to make continuous unwelcomed, insensitive, harassing comments to Plaintiff.

90.     Dreamstyle conducted no investigation into Plaintiff's complaints of discrimination, harassment, or retaliation, and subsequently administered insufficient remedies, specifically designed to target Plaintiff, harm Plaintiff emotionally and economically, and terminate her employment.  Defendants' acts, or lack thereof, caused a sexually discriminating, hostile work, and retaliatory environment to which Plaintiff could not comfortably and safely return.

91.     As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered emotional anguish and distress, loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

92.     At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

93.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**THIRD CLAIM FOR RELIEF**
**Violation of Title VII**
**Retaliation**
**42 U.S.C. § 2000e-3(a)**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC and Dreamstyle Remodeling, Inc.**

94.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

95.     At all relevant times, Dreamstyle qualified as Plaintiff's employers and Plaintiff qualified as Dreamstyle's employee under the Title VII, given that Dreamstyle has 15 or more employees.

96.     Protection against retaliation is provided by Title VII.

97.     As alleged above, Plaintiff has a protected status (female) and engaged in protected activities, including but not limited to all of her complaints to Dreamstyle concerning or regarding Watkins harassing, discriminatory, and retaliatory behavior against her.

98.     As alleged above, in response to Plaintiff's protected status and activities, Dreamstyle took actions against Plaintiff that a reasonable employee would have found materially adverse, including but not limited to not receiving sales opportunities, being placed on an indefinite unpaid administrative leave, and being terminated.

99.     As alleged above, Dreamstyle would not have taken these adverse employment actions but for the Plaintiff's protected status and activities.

100.    As alleged above, Dreamstyle knew or should have known about the conduct to which Plaintiff claims she was subjected and failed to implement reasonably prompt and appropriate corrective action. Notwithstanding the allegation that Dreamstyle's General Manager Watkins engaged in this discrimination and that complaints were made about this discrimination to Dreamstyle, at all times mentioned herein Dreamstyle's agents, managers, and supervisors knew or should have known of this conduct by witnessing some of the discriminating events and through complains of discrimination made by Plaintiff and others.

101.    As alleged above, Defendants caused Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against because of Plaintiff's sex and

engagement in protected activities such as opposing/complaining of severe, pervasive, and/or oppressive discriminatory/harassing/retaliatory behaviors.

102.     As alleged above, Dreamstyle caused, allowed, and/or condoned Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against for engaging in protected activities such as opposing discriminatory behaviors by allowing Watkins to continue to serve as manager, which allowed him to make continuous unwelcomed, insensitive, harassing comments to Plaintiff.

103.     Dreamstyle conducted no investigation into Plaintiff's complaints of discrimination, harassment, or retaliation, and subsequently administered insufficient remedies, specifically designed to target Plaintiff, harm Plaintiff emotionally and economically, and terminate her employment.  Defendants' acts, or lack thereof, caused a sexually discriminating, hostile work, and retaliatory environment to which Plaintiff could not comfortably and safely return.

104.     As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered emotional anguish and distress, loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

105.     At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

106.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**FOURTH CLAIM OF RELIEF**
**Violation of the CADA**
**Sex Discrimination**
**§§ 24-34-301 to 24-34-804, C.R.S.**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC; Dreamstyle Remodeling, Inc.; Paul Watkins**

107.    Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

108.    At all relevant times, Dreamstyle qualified as Plaintiff's employer and Plaintiff qualified as Dreamstyle's employee under the CADA, given that Dreamstyle is an employer in the State of Colorado.

109.     Individuals, such as Watkins, including managers, supervisors and co-workers, may be personally liable under the CADA for "aiding and abetting" discrimination, including sexual harassment, in violation of the CADA. § 24-34-402(1)(e)(I), C.R.S.

110.    Protection against discrimination on the basis of gender is provided by the CADA.

111.    As alleged above, Plaintiff is a woman, a member of a protected class.

112.    As alleged above, at all relevant times, Plaintiff was qualified for her outside sales position and satisfactorily performed her position.

113.    As alleged above, Plaintiff suffered adverse employment actions, including but not limited to, not receiving sales opportunities, being placed on an indefinite unpaid administrative leave after her complaint of harassment/discrimination/retaliation, and being terminated.

21

114. As alleged above, Plaintiff's sex was the motivating factor for these adverse employment actions taken by Defendants.

115. As alleged above, Defendants caused Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against because of Plaintiff's sex and engagement in protected activities such as opposing/complaining of severe, pervasive, and/or oppressive discriminatory/harassing/retaliatory behaviors.

116. Notwithstanding the allegation that Dreamstyle's General Manager Watkins engaged in this discrimination and that complaints were made about this discrimination to Dreamstyle, at all times mentioned herein Dreamstyle's agents, managers, and supervisors knew or should have known of this conduct by witnessing some of the discriminating events and through complains of discrimination made by Plaintiff and others.

117. As alleged above, Defendants caused, allowed, and/or condoned Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against for engaging in protected activities such as opposing discriminatory behaviors by allowing Watkins to continue to serve as manager, which allowed him to make continuous unwelcomed, insensitive, harassing comments to Plaintiff.

118. Defendants conducted no investigation into Plaintiff's complaints of discrimination, harassment, or retaliation, and subsequently administered insufficient remedies, specifically designed to target Plaintiff, harm Plaintiff emotionally and economically, and terminate her employment. Defendants' acts, or lack thereof, caused a sexually discriminating, hostile work, and retaliatory environment to which Plaintiff could not comfortably and safely return.

119.     As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered emotional anguish and distress, loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

120.     At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

121.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**FIFTH CLAIM FOR RELEIF**
**Violation of the CADA**
**Sexual Harassment / Hostile Work Environment**
**§§ 24-34-301 to 24-34-804, C.R.S.**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC; Dreamstyle Remodeling, Inc.; Paul Watkins**

122.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

123.     At all relevant times, Dreamstyle qualified as Plaintiff's employer and Plaintiff qualified as Dreamstyle's employee under the CADA, given that Dreamstyle is an employer in the State of Colorado.

124.     Individuals, such as Watkins, including managers, supervisors and co-workers, may be personally liable under the CADA for "aiding and abetting" discrimination, including sexual harassment, in violation of the CADA. § 24-34-402(1)(e)(I), C.R.S.

125.    Protection against sexual harassment / hostile work environment is provided by the CADA.

126.    The Tenth Circuit has recognized that the essence of either type of sexual harassment is not limited to conduct that has clearly sexual overtones. Instead, the basic question is whether the conduct at issue was directed toward someone due to her or his gender. Thus, "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII [or the CADA]." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987), *see also Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1001 (10th Cir. 1996).

127.    As alleged above, Defendants' conduct complained of by Plaintiff was unwelcome.

128.    As alleged above, Defendants' conduct complained of by Plaintiff was offensive.

129.    As alleged above, Defendants' conduct complained of by Plaintiff was sexual in nature or directed at the Plaintiff because of her sex.

130.    As alleged above, Defendants' conduct complained of by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of the Plaintiff's employment by creating an abusive working environment.

131.    As alleged above, Dreamstyle knew or should have known about the conduct to which Plaintiff claims she was subjected and failed to implement reasonably prompt and appropriate corrective action. Notwithstanding the allegation that Dreamstyle's General Manager Watkins engaged in this discrimination and that complaints were made about this discrimination

24

to Dreamstyle, at all times mentioned herein Dreamstyle's agents, managers, and supervisors knew or should have known of this conduct by witnessing some of the discriminating events and through complains of discrimination made by Plaintiff and others.

132.    As alleged above, Defendants caused Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against because of Plaintiff's sex and engagement in protected activities such as opposing/complaining of severe, pervasive, and/or oppressive discriminatory/harassing/retaliatory behaviors.

133.    As alleged above, Defendants caused, allowed, and/or condoned Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against for engaging in protected activities such as opposing discriminatory behaviors by allowing Watkins to continue to serve as manager, which allowed him to make continuous unwelcomed, insensitive, harassing comments to Plaintiff.

134.    Defendants' conducted no investigation into Plaintiff's complaints of discrimination, harassment, or retaliation, and subsequently administered insufficient remedies, specifically designed to target Plaintiff, harm Plaintiff emotionally and economically, and terminate her employment.  Defendants' acts, or lack thereof, caused a sexually discriminating, hostile work, and retaliatory environment to which Plaintiff could not comfortably and safely return.

135.    As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered emotional anguish and distress, loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

136.    At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

137.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**SIXTH CLAIM FOR RELIEF**
**Violation of the CADA**
**Retaliation**
**§§ 24-34-301 to 24-34-804, C.R.S.**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC; Dreamstyle Remodeling, Inc.; Paul Watkins**

138.    Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

139.    At all relevant times, Dreamstyle qualified as Plaintiff's employer and Plaintiff qualified as Dreamstyle's employee under the CADA, given that Dreamstyle is an employer in the State of Colorado.

140.    Individuals, such as Watkins, including managers, supervisors and co-workers, may be personally liable under the CADA for "aiding and abetting" discrimination, including sexual harassment, in violation of the CADA. § 24-34-402(1)(e)(I), C.R.S.

141.    Protection against retaliation is provided by the CADA.

142.    As alleged above, Plaintiff has a protected status (female) and engaged in protected activities, including but not limited to her complaints to Defendants concerning or regarding Watkins harassing, discriminatory, and retaliatory behavior against her.

143.    As alleged above, in response to Plaintiff's protected status and activities, Defendants took actions against Plaintiff that a reasonable employee would have found materially adverse, including but not limited to not receiving sales opportunities, being placed on an indefinite unpaid administrative leave, and being terminated.

144.    As alleged above, Defendants would not have taken these adverse employment actions but for the Plaintiff's protected status and activities.

145.    As alleged above, Dreamstyle knew or should have known about the conduct to which Plaintiff claims she was subjected and failed to implement reasonably prompt and appropriate corrective action. Notwithstanding the allegation that Dreamstyle's General Manager Watkins engaged in this discrimination and that complaints were made about this discrimination to Dreamstyle, at all times mentioned herein Dreamstyle's agents, managers, and supervisors knew or should have known of this conduct by witnessing some of the discriminating events and through complains of discrimination made by Plaintiff and others.

146.    As alleged above, Defendants caused Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against because of Plaintiff's sex and engagement in protected activities such as opposing/complaining of severe, pervasive, and/or oppressive discriminatory/harassing/retaliatory behaviors.

147.    As alleged above, Defendants caused, allowed, and/or condoned Plaintiff to be discriminated against because of her sex, to be sexually harassed, and to be retaliated against for engaging in protected activities such as opposing discriminatory behaviors by allowing Watkins to continue to serve as manager, which allowed him to make continuous unwelcomed, insensitive, harassing comments to Plaintiff.

148.    Defendants conducted no investigation into Plaintiff's complaints of discrimination, harassment, or retaliation, and subsequently administered insufficient remedies, specifically designed to target Plaintiff, harm Plaintiff emotionally and economically, and terminate her employment.  Defendants' acts, or lack thereof, caused a sexually discriminating, hostile work, and retaliatory environment to which Plaintiff could not comfortably and safely return.

149.    As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered emotional anguish and distress, loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

150.    At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

151.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**SEVENTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC; Dreamstyle Remodeling, Inc.; and Paul Watkins**

152.    Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

153.    Defendants' intentional acts of discrimination, harassment, retaliation, and other wrongful acts against Plaintiff, as alleged above, were outrageous, unacceptable, and shocking, especially in this day and age.

154.    As alleged above, for the entire time Plaintiff was employed, Defendants subjected her to acts of discrimination, harassment, and retaliation, either at the hands of someone believed to be known by Dreamstyle to be a harasser, Watkins, or by Dreamstyle itself.

155.    At all relevant times, Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff has been subjected to Defendant Watkins' repeated and ongoing harassment.  Defendants doubled-down on their acts of emotional distress when they allowed Watkins to act with impunity, in an environment where he retained power over female employees.  Defendants further doubled-down on their acts of emotional distress when it terminated her employment, desired to retaliate against Plaintiff by firing her for complaining against Watkins, attempted to have another manager -Ms. Vinet- lie and misrepresent the grounds for such termination immediately following Plaintiff's August complaint, and failed to respond to Plaintiff's repeated complaints against Watkins, and instead kept her in an unpaid leave status, effectively allowing her to "die on the vine" without any income for almost two months, while waiting for Defendants to "investigate" (which never happened) her complaint (which was ignored, and placed in limbo with no follow-up to Plaintiff).

156.    At all relevant times, Defendants allowed Watkins' unwelcomed and unacceptable behaviors against Plaintiff to occur.

157.     At all relevant times, Plaintiff suffered severe emotional distress and Defendants' intentional and/or negligent conduct was a substantial factor in causing Plaintiff's severe emotional distress, for which she sought treatment.

158.     As a direct and proximate result of the conduct of each of these Defendants, Plaintiff suffered emotional anguish, humiliation, and distress.

159.     As a direct and proximate result of the conduct of each of these Defendants, Plaintiff's employment was terminated, and she suffered loss of income, loss of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

160.     At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

161.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.


## EIGHTH CLAIM FOR RELIEF
**(Only alleged if Dreamstyle refuses to accept *respondeat superior* liability for the alleged acts of Watkins)**
**Employer's Negligent Retention of Unfit Employee**
**Against Defendants Dreamstyle Remodeling of Colorado, LLC and Dreamstyle Remodeling, Inc.**

162.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

163.     In doing the acts heretofore alleged, Dreamstyle knew, or in the exercise of reasonable diligence should have known, that Watkins was incompetent and unfit to perform the duties for which he was employed as a General Manager, and that an undue risk to female employees such as Plaintiff would exist because of his employment, his power and supervision, and prior or contemporaneous complaints against Watkins of discrimination, harassment, and/or retaliation by past or current Dreamstyle employees.

164.     Dreamstyle knew, or in the exercise of reasonable diligence should have known, that Watkins preyed on women in the workplace, including Plaintiff, by targeting them, seeking relationships with them, by testing them to understand their willingness to engage him in non-employment related activities (e.g. showing burlesque photographs of women, speaking of photography of women, asking questions about relationships and family, making sexual comments), all of which made Watkins incompetent and unfit to perform the duties for which he was employed as a General Manager, and that posed an undue risk to female employees such as Plaintiff.

165.     Despite this knowledge, Dreamstyle retained Watkins as a General Manager, in conscious disregard of the rights and safety of others, including and especially Plaintiff.

166.     As a direct and proximate result of Dreamstyle's negligent hiring, supervising, and/or retaining Watkins (who was unfit and incompetent to perform his job) was a substantial factor in causing Plaintiff's severe emotional distress.

167.     As a direct and proximate result of Dreamstyle's negligent hiring, supervising, and/or retaining Watkins (who was unfit and incompetent to perform his job), Plaintiff suffered economic harm, as Plaintiff's employment was terminated, and she suffered loss of income, loss

of employment-related opportunities such as experience and increased reputation, and other special and general damages, all in an amount to be proven at trial.

168.    At all relevant times and as alleged above, these Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

169.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

## VIII. PRAYER

WHEREFORE, Plaintiff prays for the following relief:

A.    Orders and judgments as requested;
B.    Nominal damages;
C.    Economic and compensatory damages, in an amount to be shown at trial;
D.    Consequential damages;
E.    Liquidated damages;
F.    Punitive or exemplary damages, in an amount to be shown at trial;
G.    Costs and attorney's fees;
H.    Pre- and post-judgment interest at the highest rate allowed by law;
I.    All legal or equitable relief; and
J.    All other legal or equitable relief to which Plaintiff is entitled and/or the court and/or jury deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted this 17th day of July 2020.

*s/Christopher G. Wilhelmi*

Christopher G. Wilhelmi
Attorney for Plaintiff
Stinar & Zendejas, PLLC
121 East Vermijo Ave, Suite 200
Colorado Springs, CO 80903
E-mail: chris@coloradolawgroup.com
Phone: 719-635-4200
Fax: 719-635-2493