IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–02096–KMT

AMANDA CLAYTON,

     Plaintiff,

v.

DREAMSTYLE REMODELING OF COLORADO, LLC,
DREAMSTYLE REMODELING, INC., and
PAUL WATKINS,

     Defendants.

---

## ORDER

---

Before the court is "Defendants' Partial Motion to Dismiss."  (["Motion"], Doc. No. 20.)
Plaintiff has responded in opposition to the Motion, and Defendants have replied.
(["Response"], Doc. No. 25; ["Reply"], Doc. No. 26.)  For the following reasons, the Motion is
GRANTED, in part, and DENIED, in part.

### STATEMENT OF THE CASE

Plaintiff Amanda Clayton ["Ms. Clayton"] brings this lawsuit against her former joint
employers—Defendants Dreamstyle Remodeling of Colorado, LLC, Dreamstyle Remodeling,
Inc. [collectively, "Dreamstyle"]; and Paul Watkins ["Mr. Watkins"]—alleging violations of
Title VII of the Civil Rights Act of 1964, as amended ["Title VII"], 42 U.S.C. §§ 2000(e) *et seq.*,
the Colorado Anti-Discrimination Act ["CADA"], Colo. Rev. Stat. §§ 24-34-402 *et. seq.*, as well
as intentional infliction of emotional distress.  (["Amended Complaint"], Doc. No. 15.)  Ms.

Clayton reportedly worked for Dreamstyle, as a Sales Representative, for a period of five and a half months, from March 19, 2019, until September 4, 2019. (*Id.* at ¶ 15; ["CCRD Charge"], Mot. Ex. A, Doc. No. 20-1, at 1-2.) According to the Amended Complaint, "almost immediately" after Ms. Clayton was hired, she was subjected to "inappropriate," "offensive," and "unwelcome" sexual conduct by Dreamstyle's General Manager, Mr. Watkins. (Am. Compl. ¶¶ 2, 10, 22, 25, 33, 38.) Throughout Ms. Clayton's employment with Dreamstyle, Mr. Watkins reportedly "held a position of power, control, and authority over [her] in the workplace as [her] supervisor." (*Id.* at ¶ 18.) Plaintiff alleges that, beginning in March 2019, Defendant Watkins "repeatedly showed [her] and other new employees provocative and sexually suggestive photographs of women, informing them of his pastime of photographing women." (*Id.* at ¶ 22.) Plaintiff alleges that Defendant Watkins would thereafter "routinely bring up or mention his desire to photograph women, seemingly suggesting to [her] and other women that he was looking for them to serve as his photographic models." (*Id.* at ¶ 23.) Ms. Clayton complains that, in April 2019, when she requested "feedback" from Mr. Watkins "regarding information from a sale," Mr. Watkins, "in a suggestive tone," told Ms. Clayton that he "would have to spank [her] butt," because "she had incorrectly entered the information." (*Id.* at ¶ 27.) Plaintiff alleges that her supervisor's comment amounted to a "sexualized threat." (*Id.* at ¶ 28.)

The Amended Complaint states that, following these two incidents, Plaintiff "complained of Watkins' discrimination and harassment against [her] to the Sales Manager who reported to Watkins, Sarah Pearse." (*Id.* at ¶ 30.) Plaintiff alleges that, notwithstanding her complaint, "no corrective action was taken." (*Id.*) Ms. Clayton is adamant that, at all times relevant to this lawsuit, "Dreamstyle knew or should have known of Watkins' offensive conduct," and she

claims that, during her employment, "other female employees under Watkins" made similar complaints to Dreamstyle regarding his inappropriate behavior.  (*Id.* at ¶¶ 26, 29, 31, 34, 36, 39.)

According to the Amended Complaint, in May 2019, around 9:00 PM on an unspecified date, Mr. Watkins called Ms. Clayton at her home, "under the guise of seeking a restaurant recommendation in Colorado Springs."  (*Id.* at ¶ 32.)  Plaintiff alleges that the ensuing telephone conversation "soon turned into an examination by Watkins, for approximately 90 minutes, of very personal issues," including probes into her "relationship with her husband, her family, her age, and her ethnicity."  (*Id.*)  Ms. Clayton recounts that she "was in shock for just how inappropriate Watkins' questions and statements were and tried to politely end the interrogation, but to no effect."  (*Id.*)  Plaintiff insists that she "simply could not hang up the phone," given that "it was her General Manager on the other line."  (*Id.*)

Shortly after the telephone incident, Defendant Watkins reportedly "began treating Plaintiff unfavorably," as revenge for "Plaintiff's rebuffs against [him] and/or her prior complaint to Sarah Pearse."  (*Id.* at ¶ 35.)  Plaintiff alleges, specifically, that Defendant Watkins retaliated against her by, among other things, "assigning her to appointments previously agreed upon to be too far to reasonably drive;" "direct[ing] sales opportunities away from [her], and instead g[iving] her leads that were not promising or outside of her territory or both;" and "humiliat[ing] and demean[ing]" her in front of coworkers during a staff meeting.  (*Id.* at ¶¶ 35, 37-38.)

On August 26, 2019, Plaintiff reportedly sent an email to Dreamstyle's President, Larry Chavez ["Mr. Chavez"], in which she "complain[ed]" of Defendant Watkins' "ongoing harassment and retaliatory behaviors."  (*Id.* at ¶ 40.)  Mr. Chavez and his Vice President of

Operations, Andrew MacGillivray ["Mr. MacGillivray"], apparently responded to Ms. Clayton's email that same day, "reassuring her that they w[ould] begin an immediate investigation and arrange a time for [her] and MacGillivray to speak." (*Id.* at ¶ 41.)

In her operative pleading, Plaintiff alleges that, on August 27, 2019, she was placed on unpaid administrative leave, pending an "investigat[ion]" by Dreamstyle into "the situation." (*Id.* at ¶ 42.)  Ms. Clayton complains that she was offered "[n]o other option, work environment, manager, or other action" by her employer, despite the fact that she "could at all times continue to perform her job" away from the office, given the nature of her duties.  (*Id.*)

According to the Amended Complaint, unbeknownst to Ms. Clayton, on August 28, 2019 or thereabouts, Mr. Watkins "instructed" his new Sales Manager, Alexandra Vinet, "to terminate" Ms. Clayton.  (*Id.* at ¶ 43.)  "When Ms. Vinet questioned why," Mr. Watkins reportedly "became very upset with her and, at that time, did not say anything."  (*Id.* at ¶ 44.) The following day, however, Mr. Watkins "informed Ms. Vinet" that Ms. Clayton "had filed a sexual harassment claim against him."  (*Id.* at ¶ 45.)  Defendant Watkins is alleged to have then instructed Ms. Vinet "to draft a letter on his behalf fabricating unsatisfactory performance by Plaintiff, as a basis for her termination."  (*Id.*)  Ms. Vinet reportedly refused to do so, and was subsequently retaliated against by Mr. Watkins.  (*Id.* at ¶ 46.)

According to the Amended Complaint, on September 4, 2019, Ms. Clayton sent an email to Mr. MacGillivray, in which she "expressed her frustration and uncertainty with how to move forward."[1]  (*Id.* at ¶ 48.)  One day later, on September 5, 2019, Mr. MacGillivray responded to

---

[1] This court's August 23, 2021 Order renders testimony concerning "the substance of, or [a witness's] recollection of the substance of, any spoliated text communications" inadmissible.

Ms. Clayton's email, confirming that the "investigation" into Ms. Clayton's complaints remained "ongoing," and stating that Ms. Clayton "would be welcomed back to active selling status," though apparently offering "no direction, idea, or support for how [Ms. Clayton] could comfortably and safely return to work with Watkins or be protected from future harassment and discrimination." (*Id.* at ¶ 49.)  According to Plaintiff, "the only reassurance offered" by Mr. MacGillivray was that "corrective action w[ould] be taken to address any verifiable occurrences of harassment." (*Id.*)

According to the Amended Complaint, following "almost four weeks of silence from Dreamstyle," on or about October 3, 2019, Ms. Clayton sent another email to Mr. Chavez and Mr. MacGillivray, "expressing disappointment in Dreamstyle's protections of Watkins and stating the financial and emotional impact she was suffering as a result of taking necessary leave to prevent further harassment and retaliation." (*Id.* at ¶ 50.)  Mr. MacGillivray, in his response email, is said to have, "yet again, reiterate[d] to Plaintiff that she would be welcomed back," though "offering no reassurance that the discriminatory, harassing, and retaliatory environment would be different." (*Id.* at ¶ 51.)  In that same email, Mr. MacGillivray reportedly made clear that Dreamstyle construed Ms. Clayton's current leave of absence to be "entirely voluntary." (*Id.*)  After receiving Mr. MacGillivray's email, Ms. Clayton apparently did not ever return to work at Dreamstyle.  Plaintiff claims to have been constructively terminated by her employer, on September 4, 2019.  (CCRD Charge 2; *see* Am. Compl. ¶ 98.)

---

(Doc. No. 52 at 14.)  Therefore, the court will not consider the allegations relating to such evidence here.

Plaintiff now alleges that, notwithstanding their assertions to the contrary, Defendants "never took any action to investigate" her claims of discrimination, harassment, and retaliation, nor "took [any] action to return [her] to work." (Am. Compl. ¶¶ 53-54.) Ms. Clayton further alleges that, throughout her employment with Dreamstyle, Defendants "treated female employees," including herself, "very much differently and on unequal terms than they treated male employees." (*Id.* at 58-60.) Plaintiff claims to have suffered "severe emotional distress," and to have sustained various forms of "economic harm," as a result of Defendants' actions. (*Id.* at ¶¶ 61-63.)

On November 6, 2019, Plaintiff filed a charge of discrimination with the Colorado Civil Rights Division ["CCRD"] and the Equal Employment Opportunity Commission ["EEOC"], under those agencies' work-sharing agreement. (CCRD Charge 1; *see* Compl. ¶ 13.) On July 17, 2020, after receiving notice of her right to sue from the CCRD, Plaintiff filed this action. (Doc. No. 1; Am. Compl. ¶ 13.)

In her Amended Complaint, Ms. Clayton asserts the following claims for relief: (1) Title VII sex discrimination against Dreamstyle; (2) Title VII sexual harassment/hostile work environment against Dreamstyle; (3) Title VII retaliation against Dreamstyle; (4) CADA sex discrimination against all Defendants; (5) CADA sexual harassment/hostile work environment against all Defendants; (6) CADA retaliation against all Defendants; and (7) intentional infliction of emotional distress ["IIED"] against all Defendants. (Am. Compl. ¶¶ 64-161.) As relief, Plaintiff seeks "[o]rders and judgments as requested;" "[n]ominal damages;" "[e]conomic and compensatory damages, in an amount to be shown at trial;" "[c]onsequential damages;" "[l]iquidated damages;" "[p]unitive or exemplary damages, in an amount to be shown at trial;"

"[c]osts and attorney's fees;" "[p]re- and post-judgment interest at the highest rate allowed by law;" "[a]ll legal or equitable relief;" and "[a]ll other legal or equitable relief to which Plaintiff is entitled and/or the court and/or jury deems just and proper." (*Id.* at 30.)

On October 1, 2020, Defendants filed a motion to dismiss the Amended Complaint, in part, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. 1.) Defendants argue, specifically, that Plaintiff's IIED claim is preempted by the Colorado Workers' Compensation Act, as well as inadequately pleaded. (*Id.* at 8-13.) In addition, Defendants move to dismiss Plaintiff's request for punitive damages as to her IIED claim, on the basis that the request is "premature." (*Id.* at 13-14.) Further, Defendant Watkins moves to dismiss all of the CADA claims asserted against him, specifically, arguing that Plaintiff failed to exhaust her administrative remedies prior to filing this lawsuit. (*Id.* at 5-7.) Finally, Defendant Watkins asks for an award of his attorney's fees, in the event his portion of the motion to dismiss is fully granted. (*Id.* at 14.)

## STANDARDS OF REVIEW

### I. *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Id.* at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

## II.  *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v.*

*Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 679–81.  Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, the claim survives the motion to dismiss.  *Id*. at 679.

That being said, the court need not accept conclusory allegations without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond the pleadings.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice.  *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint, and are central to the plaintiff's claims.  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

## ANALYSIS

### I.  The CADA Claims

Defendant Watkins argues that the CADA claims against him must be dismissed, under either Rule 12(b)(1) or 12(b)(6), on the grounds that Plaintiff failed to exhaust her administrative remedies.  (Mot. 5-7.)

#### A.  CADA's Exhaustion Requirement

CADA, which is Colorado's analogue to Title VII, requires a plaintiff to fully exhaust his or her administrative remedies before filing a lawsuit.  Colo. Rev. Stat. § 24-34-306(14); *accord Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 72 (Colo. 1995); *see City of Colo. Springs v. Conners*, 993 P.2d 1167, 1169 (Colo. 2000) (construing CADA's exhaustion requirement to be a "condition precedent to bringing an action in district court"); *see also Zapata v. Colo. Christian Univ.*, No. 18-cv-02529-CMA-NYW, 2019 WL 1544179, at *7 (D. Colo. Mar. 15, 2019) (noting that CADA's exhaustion requirement applies equally to suits brought in federal court).  A

plaintiff exhausts administrative remedies under CADA upon receipt of a right-to-sue notice from the CCRD.  Colo. Rev. Stat. § 24-34-306(15) ("A notice of right to sue shall constitute final agency action and exhaustion of administrative remedies and proceedings pursuant to this part 3.").

Because exhaustion is considered to be a jurisdictional prerequisite under Colorado law, the determination as to whether Plaintiff exhausted her administrative remedies with respect to her CADA claims here implicates this court's subject matter jurisdiction.[2]  *See, e.g., Woodfork v. Jefferson Cnty. Fairgrounds*, No. 20-cv-1173-WJM-NYW, 2021 WL 2283816, at *3 (D. Colo. June 4, 2021) (stating that the failure to properly exhaust administrative remedies under CADA "deprives a court of subject-matter jurisdiction over the claim"); *Lasser v. Charter Commc'ns, Inc.*, No. 19-cv-02045-RM-MEH, 2020 WL 2309506, at *3 (D. Colo. Feb. 10, 2020) ("[G]iven the jurisdictional implications of failure to exhaust administrative remedies under CADA, the Motion is properly characterized a factual attack on the Court's subject matter jurisdiction."), *recommendation mooted by* 2020 WL 1527333 (D. Colo. Mar. 31, 2020); *see also* Colo. Rev. Stat. § 24-34-306(2)(b)(I)(C) (commanding that "no district court shall have jurisdiction to hear" an unexhausted CADA claim).

To properly exhaust administrative remedies under CADA, a plaintiff must file a timely charge of discrimination with the CCRD, "stating the name and address of the respondent alleged to have committed the discriminatory or unfair practice."  Colo. Rev. Stat. § 24-34-

---

[2] Where, as here, a federal court exercises supplemental jurisdiction over state law claims, it must apply state substantive law and federal procedural law. *Felder v. Casey*, 487 U.S. 131, 151 (1988). As such, the court applies CADA's exhaustion requirements to Ms. Clayton's CADA claims. *See Lamar Co. v. Miss. Transp. Comm'n*, 786 F. App'x 457, 460 (5th Cir. 2019) (observing that the exhaustion of administrative remedies is a matter of substantive law).

306(1)(a).  In her charge of discrimination filed with the CCRD, Plaintiff listed only "Dreamstyle Remodeling, Inc. a/k/a Dreamstyle Remodeling of Colorado" as a respondent.  (CCRD Charge 1.)  While Ms. Clayton does make numerous references to Mr. Watkins within the charge document, nowhere does she actually name Mr. Watkins to be a "respondent," or otherwise identify him as such.  Indeed, in the document, Ms. Clayton explicitly refers to Mr. Watkins as "Respondent's General Manager."  (*Id.*)  Further, in setting forth her allegations within the CCRD charge, Ms. Clayton specifically names two other Dreamstyle employees, in addition to Mr. Watkins—"Respondent's Manager, Sarah Pierce [sic]," and "Respondent's President, Larry Chavez."  (*Id.* at 1-2.)  Notably, Plaintiff provides no explanation as to why she did not name those two individuals as additional defendants in this action under the same theory she used to justify naming Defendant Watkins.  As such, the charge document "provides no notice that Plaintiff was intending to file suit against Defendant [Watkins] personally for employment discrimination any more than it provides notice to the other [two] individuals identified." *Lasser*, 2020 WL 2309506, at *6; *see also Worrell v. Colo. Cmty. Bank*, No. 10-cv-00671-ZLW-BNB, 2010 WL 2943487, at *3 (D. Colo. July 21, 2010) (holding that a plaintiff failed to exhaust her administrative remedies under CADA with respect to claims asserted against her employer's Chief Executive Officer, where the plaintiff "did discuss alleged actions taken by" that individual within the charge document, but only listed "Colorado Community Bank" as the respondent).  Further, as Mr. Watkins points out, the "Notice of Right to Sue" letter, which Ms. Clayton ultimately received from the CCRD, and which Ms. Clayton attached to her initial pleading, references only "Dreamstyle Remodeling."  (Mot. 6-7; *see* Doc. No. 1-1 at 1.)

In her Response, Plaintiff complains that the CCRD's charge document "is an antiquated form," which "does not allow individuals to be named as respondents," given that the document asks the complainant to identify, as the "Respondent," the "Employer, Labor Organization, Employment Agency, Apprenticeship Committee, [or] State or Local Government Agency who discriminated against [them]," only.  (Resp. 2.; *see* CCRD Charge 1.)  Plaintiff is adamant that "the form prejudices complainants, like [herself], looking to hold their individual harassers liable." (Resp. 2.)  According to Plaintiff, Defendants' "overly technical demand" that she "have the knowledge or forethought to file a separate claim with the CCRD against an individual harasser (contradicting the direction provided on the CCRD's own form) is not reasonable and not required under the law."  (*Id.* at 13.)  Ms. Clayton is adamant that her CCRD charge "provided enough information to place the individual unnamed respondent," *i.e.,* Mr. Watkins, "on notice" of her intention to sue him personally.  (*Id.*)  However, in making that argument, Plaintiff fails to point to *any* instance in which a court has found CADA's exhaustion requirement to be met as to an "individual unnamed respondent," merely by virtue of the complainant's referencing that individual in the CCRD charge.  Further, to the extent that Plaintiff argues that the structure of the form is unfair or prejudicial to complainants, it is worth noting that the documents attached to Plaintiff's initial pleading clearly show that she was represented by counsel during the administrative phase of this litigation.  (*Id.* at 2-3); *see Bank v. Allied Jewish Fed. of Colo.*, 4 F. Supp. 3d 1238, 1242 (D. Colo. 2013) (finding references within the CCRD charge to conduct by the plaintiff's supervisor, alone, to be insufficient to show exhaustion, where the plaintiff was represented by counsel at the time that she filed a CCRD

charge, and where the right-to-sue letter from the CCRD referenced only the corporate defendant).

Under these circumstances, Ms. Clayton's CCRD charge of discrimination cannot reasonably be read as asserting any claim against Mr. Watkins, individually. Accordingly, Plaintiff's CADA claims against Defendant Watkins are dismissed without prejudice for failure to exhaust administrative remedies. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2019) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.") (emphasis in original); *see also Robinson v. Reg. Transp. Dist.*, No. 1:16-cv-2870-WJM-MJW, 2018 WL 2966881, at *16 (D. Colo. June 13, 2018) (dismissing unexhausted CADA claims without prejudice).

## II. The IIED Claim

In her operative pleading, Plaintiff seeks to impose liability against Defendants for intentional infliction of emotional distress. (Am. Compl. ¶¶ 152-60.) Specifically, Plaintiff alleges that, throughout the duration of her employment, Defendants subjected her to "intentional acts of discrimination, harassment, retaliation," as well as other "wrongful acts," which "were outrageous, unacceptable, and shocking, especially in this day and age," and which caused her to suffer "severe emotional distress." (*Id.* at ¶¶ 153, 157.) Defendants move to dismiss Plaintiff's IIED claim, on the grounds that the claim is preempted by the Colorado Workers' Compensation Act ["CWCA"], as well as inadequately pleaded. (Mot. 8-13.)

### A. Whether Plaintiff's IIED Claim is Preempted by the CWCA

The CWCA "provides exclusive remedies for employees suffering work-related injuries and occupational diseases." *Horodyskyj v. Karanian*, 32 P.3d 470, 474 (Colo. 2001) (citations

omitted).  "A plaintiff who is eligible for compensation under the CWCA is barred from instituting a private tort action for the same injury." *Donaldson v. Am. Banco Corp.*, 945 F. Supp. 1456, 1465 (D. Colo. 1996) (citing *Mass v. Martin Marietta Corp.*, 805 F. Supp. 1530, 1543 (D. Colo. 1992)).

An employee is entitled to compensation under the CWCA, and thus, is precluded from bringing a tort claim, where three conditions are met: (1) "at the time of the injury, both employer and employee are subject to the provisions of [the CWCA,] and where the employer has complied with the provisions thereof regarding insurance;" (2) "at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment;" and (3) "[w]here the injury . . . is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted." Colo. Rev. Stat. § 8-41-301(1); *In re Question Submitted by the U.S. Ct. of Appeals for the Tenth Circuit*, 759 P.2d 17, 19 (Colo. 1998) (en banc).  Here, the parties dispute whether the "arising out of" requirement is met.  (Resp. 10-11.)

"The phrases 'arising out of' and 'in the course of' are not synonymous and a claimant must meet both requirements." *Horodyskyj*, 32 P.3d at 475.  The term, "in the course of," refers to "the time, place, and circumstances under which a work-related injury occurs." *Id.* (citing *Popovich v. Irlando*, 811 P.2d 379, 383 (Colo. 1991)).  An injury occurs "in the course of the employee's employment," if "it takes place within the time and place limits of the employment relationship and during an activity connected with the employee's job-related functions." *Id.* (citations omitted).  The term, "arising out of," by contrast, "refers to the origin or cause of an injury." *Id.* (citation omitted).  "An injury 'arises out of' employment when it has its origin in an

15

employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract." *Id.* In other words, "[t]here must be a causal connection between the injury and the work condition for the injury to arise out of the employment." *Id.* (citing *Popovich*, 811 P.2d at 383).

Defendants argue that Plaintiff's IIED claim arose out of her employment, and thus, is barred by the CWCA's exclusivity provision, because the claim is predicated "entirely" upon Plaintiff's "status as a Dreamstyle employee." (Mot. 12.) In making that argument, Defendants rely on Ms. Clayton's own allegations, which make clear that the IIED claim relates to "discrimination, harassment, and retaliation" that occurred "for the entire time [she] was employed." (*Id.*; *see* Am. Compl. ¶¶ 153-54.) In addition, Defendants argue that Plaintiff's allegations do not suggest that her alleged injuries arose from "any personal relationship or dispute," or that Defendant Watkins, specifically, "was acting outside the scope of his employment." (Mot. 12-13.) Defendants cite an unpublished District of Colorado decision, *Abrahamson v. Sandoz, Inc.*, No. 06-cv-00636-WYD-MJW, 2008 WL 906124 (D. Colo. Mar. 31, 2008), for the proposition that the CWCA's exclusivity provision applies to claims of "work related emotional distress." (*Id.* at 11-12.)

While true that the CWCA is the exclusive remedy for work-related emotional distress, the Colorado Supreme Court has indicated that claims of workplace sexual discrimination or harassment are different. In cases involving allegations of co-employee sexual misconduct, the Colorado Supreme Court has developed a specific test for determining whether an injury "arises out of" employment for purposes of the CWCA:

> Under the test, willful assaults by co-employees are divided into three categories:
> (1) those assaults that have an inherent connection with the employment; (2) those

assaults that are inherently private; and (3) those assaults that are neutral.  Both the first and third categories of assaults arise out of the employment for the purposes of the [CWCA] and therefore prevent an employee from suing his or her employer in tort for injuries based on such assaults.  Only the second category of injuries, inherently private assaults, does not arise out of employment and thus tort claims based on such assaults are not barred by workers' compensation exclusivity.

*Horodyskyj*, 32 P.3d at 475 (citing *Popovich*, 811 P.2d at 383).  The *Horodyskyj* court explained that the second category—inherently private assaults, which are not covered by the CWCA—has been expanded "to include those [assaults] in which the assailant and victim did not know each other prior to, or associate outside of, the employment and where the victim was specifically chosen or targeted."  *Id.* at 477.  In such cases, "the nexus between the assault and the employee's work duties is insufficient to sustain a determination that the harassment arose out of employment."  *Id.*  The Colorado Supreme Court further explained that "sexual harassment ordinarily does not fall into either category of assaults that are compensable under the [CWCA]."  *Id.* at 478.  Applying that framework to the facts before it, the *Horodyskyj* court concluded that the alleged sexual harassment by a co-employee did not arise out of the plaintiff's employment, because the harassment, as alleged, was specifically targeted, as well as private and personal in nature, despite the fact that the harassment took place exclusively during regular work hours.  *Id.*

In this case, Ms. Clayton's allegations are analogous to those in *Horodyskyj*.  Accepting the Amended Complaint's allegations as true and construing them in her favor, Ms. Clayton alleges sexual harassment by Mr. Watkins that took place almost entirely during work hours; that she did not have a relationship with Mr. Watkins outside of work; and that the complained-of harassment was targeted.  As such, Plaintiff has plausibly alleged an injury that is inherently private, and therefore, does not arise out of her employment.  For that reason, Plaintiff's IIED claim is not barred by the CWCA's exclusive-remedy provisions.  *See Judson v. Walgreens Co.*,

No. 20-cv-00159-CMA-STV, 2021 WL 1207445, at *7 (D. Colo. Mar. 31, 2021) (holding that a

plaintiff's IIED claim was not precluded by the CWCA, where the plaintiff alleged sexual

harassment committed by customers that took place during work hours, where the plaintiff did

not have a relationship with any of those customers outside of work, and where the allegations

showed that the harassment was targeted); *Freeman v. Taco Bell Corp.*, No. 07-cv-00085-PSF-

MEH, 2007 WL 1655356, at *1 (D. Colo. June 5, 2007) (holding that the injuries at issue were

"related to" the plaintiff's "claims for sexual harassment," and thus, were not subject to the

CWCA); *c.f. Pub. Serv. of Colo. v. Indus. Claim Appeals Office of State*, 68 P.3d 583, 586 (Colo.

App. 2003) (finding that a plaintiff's retaliation claim—alleging that he was retaliated against by

his employer for testifying in support of a female coworker's sexual harassment claim—was

precluded by the CWCA, because the plaintiff's claim "was not premised on sexual harassment,

but rather arose out of the work-related retaliation [he] experienced following his testimony in

the lawsuit of a coworker"); *Henderson v. United Parcel Serv., Inc.*, No. 04-cv-01545-PSF-CBS,

2006 WL 1658690, at *17 (D. Colo. June 7, 2006) (finding that a plaintiff's state law battery

claim against a coworker arose out of his employment, and therefore, was barred by the CWCA,

where the confrontation was "about job performance," and where the plaintiff admitted that his

relationship with the coworker was "exclusively work-related").

### B. *Whether the IIED Claim is Adequately Pleaded*

Defendants argue, in the alternative, that Plaintiff's IIED claim fails to plausibly state a

claim for relief. (Mot. 8-11.) In Colorado, the required elements of an IIED claim are: "(1) the

defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such

conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3)

the defendant's conduct caused the plaintiff to suffer severe emotional distress." *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994)); *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999) (describing this tort as "intentional infliction of emotional distress by outrageous conduct"). "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (citing *Coors Brewing*, 978 P.2d at 666). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing*, 978 P.2d at 666 (quoting Restatement (Second) of Torts § 46 (1965)); *see Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988) ("[T]he defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct.").

Further, and relevant here, the facts necessary to prove an IIED claim cannot be "identical to" the facts necessary to prove "the federal statutory claims over which the court has original jurisdiction." *Emerson v. Wembley USA, Inc.*, 433 F. Supp. 2d 1200, 1228 (D. Colo. 2006) (quoting *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994)) (alterations omitted). In other words, the "allegations forming the basis of a claim for outrageous

conduct *must exceed* those which would state a colorable claim of discrimination." *Id.* (citing *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997)) (emphasis in original); *see Grandchamp*, 854 F.2d at 384 ("It is well-settled under Colorado law that discharge from employment, without more, is not outrageous conduct.") (collecting cases); *see also Gard*, 859 F. Supp. at 1354 (stating that an IIED claim is not meant to be an "incantation to augment damages"). Thus, "[w]here the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)." *Id.*; *see, e.g., Salimi v. Farmers Ins. Grp.*, 684 P.2d 264, 265 (Colo. App. 1984) (affirming the dismissal of an IIED claim, which was "largely based upon" allegations that the plaintiff was demoted in violation of the employer's policy and procedure manual).

That being said, "it is equally clear that an employer is not shielded from employee claims of outrageous conduct." *Grandchamp*, 854 F.2d at 385. Rather, in cases where both employment-based discrimination claims and IIED claims are alleged, "the *manner* of the discharge, and the employer's conduct, is critical to a finding of outrageous conduct." *Id.* (citing *Montgomery Ward & Co. v. Andrews*, 736 P.2d 40, 46 (Colo. App. 1987)) (emphasis in original). For instance, a viable IIED claim may be found where the employer acted with knowledge of the employee's vulnerable state. *See, e.g., Christen-Loper v. Bret's Electric, LLC*, 175 F. Supp. 3d 1213, 1226 (D. Colo. 2016) (finding a plausibly alleged IIED claim, in addition to a Title VII claim, where the complaint's allegations reasonably suggested that, while the plaintiff "was lying in a hospital bed after suffering a severe bi-polar episode and under a suicide watch, her employer, who was aware of the plaintiff's "compromised circumstances, took the opportunity to

terminate [the] plaintiff's employment because it was upset with her for taking time off from work to visit her doctor"); *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499-500 (Colo. App. 2002) (holding evidence sufficient to support an IIED claim, where an employer discharged the plaintiff while he was on sick leave recuperating from a heart condition, and did so by entering the plaintiff's home uninvited and giving him the termination notice as he lay in bed).  A viable IIED claim may also be found where sexual acts are coerced from a subordinate in exchange for job benefits or job security, or where some form of physical assault occurs.  *See, e.g., Pearson*, 70 P.3d at 597 (finding sufficient evidence to support an IIED claim, where the plaintiff was pressured into having sex with her employer, who "caused [the plaintiff] to believe that she had no choice in the matter: if she did not comply with his requests, she would lose her job"); *Kirk v. Smith*, 674 F. Supp. 803, 804 (D. Colo. 1987) (finding a viable IIED claim relating to a teacher's demotion, where the teacher alleged that, when she met with the school superintendent to discuss her demotion, the superintendent "discovered that she was tape-recording the discussion, and, in an effort to confiscate the tape recorder, physically assaulted her and threw her to the ground").

In this case, the court finds the allegations supporting Plaintiff's IIED claim to be insufficiently distinct from those allegations supporting her claims under Title VII and CADA for discrimination, harassment, and retaliation.  In her Amended Complaint, Plaintiff supports her IIED claim, first, by "incorporat[ing] by reference the above-mentioned paragraphs as if fully restated and realleged herein."  (Am. Compl. ¶ 152.)  This statement is followed by conclusory assertions that "Defendants' intentional acts of discrimination, harassment, retaliation, and other wrongful acts against Plaintiff, as alleged above, were outrageous, unacceptable, and shocking, especially in this day and age;" that "Defendants acted with reckless disregard of the probability

that Plaintiff would suffer emotional distress;" and that "Plaintiff suffered severe emotional distress and Defendants' intentional and/or negligent conduct was a substantial factor in causing Plaintiff's severe emotional distress." (*Id.* at ¶¶ 153, 155, 157.)  The factual allegations undergirding Plaintiff's IIED claim are indistinguishable from the factual allegations supporting her Title VII and CADA claims.  Courts in this District have routinely dismissed IIED claims under similar circumstances.  *See, e.g., Finley v. Premier Earthworks & Infrastructure, Inc.*, No. 18-cv-00762-MEH, 2018 WL 4635958, at *4 (D. Colo. Sept. 27, 2018) (dismissing an IIED claim under Rule 12(b)(6), where the complaint contained "no separate factual allegations for the outrageous conduct claim that differ[ed] from the factual allegations supporting [the] Title VII or CADA claims"); *Visor*, 965 F. Supp. at 33 (dismissing an IIED claim, where the plaintiffs supported the IIED claim, merely by incorporating, by reference, the allegations supporting their Title VII discrimination and retaliation claims, and then adding that "Defendant's course of conduct as described . . . was extreme and outrageous" and "done with the intent of causing the Plaintiffs severe emotional distress"); *see also Romero v. Franklin D. Azar & Assocs., P.C.*, No. 20-cv-00097-STV, 2020 WL 7640872, at *12 (D. Colo. Dec. 22, 2020) (granting a Rule 12(b)(6) motion to dismiss an IIED claim, which was "subsumed by" the plaintiff's Title VII claims); *Goodwin v. Student Movers, Inc.*, No. 11-cv-02486-WYD-KLM, 2012 WL 1090427, at *3-4 (D. Colo. April 2, 2012) (same).

Further, the conduct alleged by Ms. Clayton clearly does not rise to the level of outrageousness required to support a claim for IIED under Colorado law.  At most, Plaintiff alleges that, over the course of five and a half months, her supervisor showed her and other colleagues sexually suggestive photographs, directed two lewd remarks towards her, and forced

her to endure a single, inappropriate afterhours telephone conversation.  This alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *See, e.g., McCarty*, 15 P.3d at 1126 (finding insufficiently outrageous conduct to state an IIED claim, where the plaintiff, who claimed to be uniquely vulnerable to severe emotional distress, alleged that his supervisors sought to "wash him out of his employment" through a pattern of intimidation and harassment, including forms of psychological harassment, such as threatening phone calls, as well as physical intimidation in the form of two vehicular assaults); *Flowers v. Fed. Express Corp.*, No. 06-cv-01010-WYD-KLM, 2008 WL 185699, at *5 (D. Colo. Jan. 18, 2008) (finding insufficient evidence to support a plaintiff's IIED claim against her former employer, where the conduct at issue "involved only a few relatively isolated incidents over a two year span," and where there was no evidence that the employer "used his position to coerce [the plaintiff] in any manner").  Notably, the allegations cannot be reasonably read to suggest that Ms. Clayton was subjected to any form of sexual coercion or physical assault.  *See Preston v. Atmel Corp.*, 560 F. Supp. 2d 1035, 1041 (D. Colo. 2008) (finding an employment-based IIED claim to be inadequately pleaded, where the allegations did not show any "ongoing, suggested threat of unwanted physical or sexual contact").  Nor do Plaintiff's allegations plausibly show that she had any particular vulnerability, much less that Defendants took any wrongful actions against her *with knowledge* of that vulnerability.  *See Murphy v. Lowes Cos.*, No. 17-cv-01720-REB-KLM, 2018 WL 2563408, at *4 (D. Colo. June 4, 2018) (holding allegations—that the plaintiff "was held against her will, retaliated against, verbally mocked and treated unfairly"—did not rise to the requisite level of "outrageousness" necessary to state a viable IIED claim).  Further, to the extent that Ms. Clayton predicates her IIED claim on the fact

that Dreamstyle "terminated her employment," or otherwise retaliated against her for complaining about Mr. Watkins's inappropriate conduct, her operative pleading clearly states that, while she was on leave, Dreamstyle continued to "reiterate" that she "would be welcomed back," should she choose to return to her position. *See Deschenes Consulting LLC v. Nu Life Mkt. LLC*, No. 19-cv-03465-RM-SKC, 2020 WL 7025142, at *8-9 (D. Colo. Nov. 30, 2020) (finding no viable IIED claim arising from the plaintiff's termination, where the allegations showed that the plaintiff was terminated, only after he failed to timely comply with his employer's request "to travel to Kansas;" the termination letter "expressed appreciation for [the plaintiff]'s years of service;" and the employer "offered to pay his accounts payable, and offered to write him a reference letter").

On this record, then, Plaintiff has failed to plausibly allege an IIED claim under Colorado law.  Accordingly, the dismissal of that claim as to all Defendants is warranted.  As such, there is no need to address whether Plaintiff's request for punitive damages as to the IIED claim is premature.

### III. *Request for Attorney's Fees*

As a final matter, Defendant Watkins requests an award of his attorney's fees, pursuant to Colo. Rev. Stat. § 13-17-201, as the prevailing party, and pursuant to Colo. Rev. Stat. §§ 13-17-102 and 24-34-405, on the grounds that Plaintiff brought this lawsuit against him "unreasonably and vexatiously."  (Mot. 14.)

#### A. *Fees Pursuant to Colo. Rev. Stat. §§ 13-17-102 and 24-34-405*

Defendant Watkins requests an award of fees under Colo. Rev. Stat. §§ 13-17-102 and 24-34-405, on the grounds that Plaintiff commenced this action against him "unreasonably and

vexatiously." (Mot. 14.)  Section 13-17-102 of the Colorado Revised Statutes provides that a court "shall award . . . reasonable attorney fees" in applicable civil actions "that the court determines lacked substantial justification."  Colo. Rev. Stat. § 13-17-102(2); *accord Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist.*, 247 P.3d 567, 575 (Colo. 2011).  A claim lacks "substantial justification" where it is "substantially frivolous, substantially groundless, or substantially vexatious."  Colo. Rev. Stat. § 13-17-102(4).  "A claim is vexatious if it is brought or maintained in bad faith."  *In re Marriage of Roddy & Betherum*, 338 P.3d 1070, 1077 (Colo. App. 2014) (citation omitted).  Section 24-34-405 of the Colorado Revised Statutes, which applies specifically to CADA claims, likewise allows a prevailing defendant to recover attorney fees, where the plaintiff's claims are found to be "frivolous, groundless, or vexatious."  Colo. Rev. Stat. § 24-34-405(5); *accord Elder v. Williams*, 477 P.3d 694, 699 (Colo. 2020).

The court finds nothing in the record here to suggest that Plaintiff's claims against Defendant Watkins lacked substantial justification.  Although Ms. Clayton's arguments ultimately proved unsuccessful, her positions were not so utterly lacking in factual or legal foundation as to render her claims unreasonable or vexatiously brought.  *See Cherokee Metro. Dist.*, 247 P.3d at 576 ("Where rational minds can disagree, . . . a party's claims to pursue a creative, but ultimately wrong, legal theory to protect its significant rights are not substantially frivolous, groundless, or vexatious.").  For that reason, the court does not find an award of such fees to be warranted here.  *See Diebold Enters. Sec. Sys., Inc. v. Low Voltage Wiring, Ltd.*, No. 13-cv-00505-REB-KLM, 2014 WL 1491327, at *1-2 (D. Colo. Apr. 14, 2014) (declining to award fees pursuant to § 13-17-102 under such circumstances).

### B.  Fees Pursuant to Colo. Rev. Stat. § 13-17-201

Section 13-17-201 of the Colorado Revised Statutes provides, in relevant part, as follows:

> In all actions brought as a result of a death or injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

The provision, in essence, requires the court to award reasonable attorney's fees to a defendant, where two conditions are met: (1) the action lies in tort; and (2) the action is dismissed pursuant to Rule 12(b).[3]  *Luskin Daughters 1996 Trust for Benefit of Ackerman v. Young*, 448 P.3d 982, 987 (Colo. 2019) (citing *Crandall v. City of Denver*, 238 P.3d 659, 663 (Colo. 2010)); *accord Infant Swimming Rsch., Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 715 (10th Cir. 2009). Because attorney fee statutes are considered "substantive," "federal courts should use § 13-17-201 as the fee recovery provision when Colorado state law tort claims are dismissed under [Rule] 12(b)." *Infant Swimming*, 335 F. App'x at 715 (citing *Jones*, 203 F.3d at 757).  The burden of proof lies with the defendant to show by a preponderance of the evidence that he is entitled to an award of his attorney fees under § 13-17-201.  *Haynes v. City of Gunnison*, 214 F. Supp. 2d 1119, 1120 (D. Colo. 2002) (citing *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 383 (Colo. 1994)).

Here, Defendant Watkins's request for fees under § 13-17-201 fails both procedurally and substantively.  Substantively, Mr. Watkins fails to address the extent to which either of the

---

[3] Although § 13-17-201 specifically references claims dismissed "under rule 12(b) of the Colorado rules of civil procedure," the provision "applies with equal force" when a federal court dismisses a pendent state tort pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 n.6 (10th Cir. 2000).

two conditions required by the statute are met, *i.e.,* that "the action lies in tort," and that "the action is dismissed pursuant to Rule 12(b)." *See Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-cv-02129-MSK-NYW, 2016 WL 8578096, at *13 (D. Colo. June 20, 2016) (declining to recommend an award of fees under § 13-17-201, where the defendant failed to present any "compelling argument" as to whether both requirements were met), *recommendation adopted by* 2016 WL 8578252 (D. Colo. Sept. 21, 2016).  As such, the court declines to extend its analysis beyond the arguments actually set forth by the parties, all of whom are represented by able counsel.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not the court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Procedurally, the Local Rules of this District make clear that, "[u]nless otherwise ordered by the court, a motion for attorney fees shall be supported by one or more affidavits," and "shall include the following for each person for whom fees are claimed: (1) a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed; and (2) a summary of relevant qualifications and experience."  D.C.COLO.LCivR 54.3.  In this case, Defendant Watkins has not addressed, much less satisfied, these procedural requirements.  *See Gross v. Silverberg*, No. 10-cv-00687-REB-BNB, 2011 WL 721899, at *1 (D. Colo. Feb. 23, 2011) (denying a request for attorney fees under § 13-17-201, in part, for failure to comply with Local Rule 54.3); *see also Savant Homes, Inc. v. Collins*, No. 13-cv-2049-WJM-MEH, 2015 WL

4932120, at *3 (D. Colo. Aug. 19, 2015) ("Failure to follow [Local Rule 54.3] is reason enough to deny or substantially reduce a fee request.").

On the present record, Defendant Watkins has failed to meet his burden to show his entitled to attorney's fees under § 13-17-201 by a preponderance of the evidence.  Therefore, Defendant Watkins's request for such fees is denied without prejudice.

Accordingly, it is

**ORDERED** that "Defendants' Partial Motion to Dismiss" (Doc. No. 20) is **GRANTED, in part, and DENIED, in part**.  Specifically, Plaintiff's CADA claims against Defendant Watkins are **DISMISSED without prejudice**, pursuant to Federal Rule of Civil Procedure 12(b)(1), for failure to exhaust administrative remedies.  Plaintiff's claims for intentional infliction of emotional distress against all Defendants are **DISMISSED without prejudice**, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  The motion is **DENIED** in all other respects.  It is further

**ORDERED** that Defendant Watkins is **DISMISSED from this lawsuit**.  The case proceeds against Defendants Dreamstyle Remodeling of Colorado, LLC and Dreamstyle Remodeling, Inc., solely on Plaintiff's Title VII and CADA claims.

Dated this 7th day of September, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge